RAÚL R. LABRADOR
ATTORNEY GENERAL

JOY M. VEGA, ISB No. 7887
Deputy Attorney General
Chief, Energy and Natural Resources Division

MICHAEL C. ORR, ISB No. 6720
Deputy Attorney General
Energy and Natural Resources Division
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8072
Email: joy.vega@ag.idaho.gov
michael.orr@ag.idaho.gov

*Attorneys for the State of Idaho*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

UNITED STATES OF AMERICA, *et al.*,

Plaintiffs and
Counterdefendants,

vs.

STATE OF IDAHO, *et al.,*

Defendants and
Counterclaimants.

**Case No. 1:26-cv-00592-REP**

**STATE OF IDAHO'S ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF [DKT. 1] AND COUNTERCLAIM FOR DECLARATORY RELIEF**

COME NOW the State of Idaho, the Idaho Department of Water Resources, and Mathew Weaver, in his official capacity as Director of the Idaho Department of Water Resources (collectively, "State of Idaho" or "State"), by and through the Office of the Attorney General, their attorneys of record, hereby answer the allegations of

the *Complaint for Declaratory and Injunctive Relief* [Dkt. 1] ("Complaint"), assert affirmative defenses thereto, and plead and aver in Counterclaim against the United States of America, for the United States Department of Energy and the United States Department of Defense (collectively "United States"), as follows:

**GENERAL DENIAL**

The State of Idaho denies any allegation of the Complaint not expressly admitted herein.

**RESPONSES TO ALLEGATIONS**

1. Answering paragraph 1 the State of Idaho admits that the Idaho National Laboratory ("INL") is a Department of Energy ("DOE") facility located in southeastern Idaho, that the Experimental Breeder Reactor- I is located at INL, and that INL is a location for U.S. Department of the Navy ("Navy") nuclear programs. Answering further, the State lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 1 of the Complaint and therefore deny them.

2. The State lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 2 of the Complaint and therefore denies them. Answering further, the State admits the first sentence of paragraph 2, and the part of the third sentence that alleges, "INL hosts the Naval Nuclear Propulsion Program's ("NNPP") Naval Reactors Facility ("NRF"), as part of the joint DOE-Navy NNPP." Answering further, the State denies any remaining allegations in paragraph 2.

3. The State lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first, third, fourth and fifth sentences of paragraph 3 of the Complaint and therefore denies them. Answering further, the State admits the allegations in the second sentence of paragraph 4, but avers that the Executive Order discussed therein speaks for itself and is the best evidence of its content.

4. In response to paragraph 4 of the Complaint, the State of Idaho admits the allegations that in the Snake River Basin Adjudication ("SRBA"), the Twin Falls District Court of Idaho's Fifth Judicial District decreed a water right reserved under federal law in the name of the United States of America Department of Energy, for a maximum annual diversion of 35,000 acre-feet per year ("water right no. 34-10901"), after the United States and the State of Idaho had entered into a Water Rights Agreement. Answering further, the State of Idaho denies the allegation that water right no. 34-10901 was decreed "in support of this energy dominance and national security mission." The State denies any remaining allegations in paragraph 4.

5. In response to paragraph 5 of the Complaint, the State of Idaho admits that the Director of the Idaho Department of Water Resources issued a "Final Order Curtailing Ground Water Rights Junior to October 11, 1900" ("Order") on May 14, 2026, and that water right no. 34-10901 was included in the Order along with those of other federal agencies and hundreds of water rights held by private individuals and entities. Answering further, the State denies the allegation that the Order "required use of water to be cut to zero."

6. The State of Idaho denies the allegations in paragraph 6 of the Complaint.

7. The State of Idaho denies the allegations in the first sentence of paragraph 7 of the Complaint. The State of Idaho lacks knowledge or information sufficient to form a belief about the truth of the factual allegations in the remaining sentences of paragraph 7 and for this reason denies them.

8. Paragraph 8 of the Complaint is the United States' characterization of their request for relief which the State of Idaho understands to in fact be the United States' motivation for filing this action. Answering further, the State of Idaho denies the allegation in paragraph 8 that "the IDWR lacks the authority to administer federal water rights." Answering paragraph 8 further, the State of Idaho denies that the United States is entitled to the rulings, judgment, and declaratory and injunctive relief it seeks in this action. The State denies any remaining allegations in paragraph 8.

**Responses to "Jurisdiction and Venue" Allegations**

9. The first sentence of paragraph 9 of the Complaint is the United States' characterization of this action for which no response is required. Answering further, the State denies the allegations in the second sentence of paragraph 9.

10. The State of Idaho denies the allegations in paragraph 10 that venue is proper in the United States District Court for the District of Idaho. Answering further, the State admits the remaining allegations of paragraph 10.

**Responses to "Parties" Allegations**

11. In response to paragraph 11 of the Complaint, the State of Idaho admits that the United States of America is the Plaintiff in this action, suing on its own behalf and on behalf of DOE and the Navy. The State of Idaho lacks knowledge or information sufficient to form a belief about the truth of the allegations that the United States is suing on behalf of other, unnamed, executive departments and their subdivisions, and therefore denies the remaining allegations in paragraph 11.

12. In response to paragraph 12 of the Complaint, the State of Idaho admits that DOE is a federal agency of the United States. The State denies the remaining allegations in paragraph 12 because the cited Executive Order and statute speak for themselves and are the best evidence of their content.

13. In response to paragraph 13 of the Complaint, the State of Idaho admits that the Department of Defense (also known as the Department of War) is an executive department of the United States and that the Navy is a military department within the Department of Defense. The State denies the remaining allegations in paragraph 13.

14. The State of Idaho admits the allegation stated in the first sentence of paragraph 14. Answering further, the remaining allegations in paragraph 14 of the Complaint characterize cited statutes, an Executive Order, and the Federal Register, which are the best evidence of their content. To the extent any further response is required, the State of Idaho denies the allegations in paragraph 14.

15. The State of Idaho admits the allegations in paragraph 15 of the

Complaint.

16. The State of Idaho admits the allegations in paragraph 16 of the Complaint to the extent they are understood as referring to "*conjunctive* administration" rather than "*concurrent* administration"; otherwise, the State denies the allegations in paragraph 16.

17. The State of Idaho admits the allegations in paragraph 17 of the Complaint to the extent they are understood as referring to "Mathew Weaver" not "Matthew Weaver" as the Director of the Idaho Department of Water Resources.

**Responses to "Legal Background" Allegations**

18. The State of Idaho admits that paragraph 18 correctly quotes part of clause 2 of Article VI of the United States Constitution, and that this clause is generally known as "the Supremacy Clause." The State denies any other allegations in paragraph 18.

19. The State of Idaho admits that paragraph 19 of the Complaint correctly quotes a passage in *United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010), which in turn quotes a passage in *McCulloch v. Maryland*, 17 U.S. 316 (1819). The State denies any other allegations in paragraph 19.

20. The State of Idaho admits that paragraph 20 of the Complaint correctly quotes passages in *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988), and in *Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996). The State denies any other allegations in paragraph 20.

21. The State of Idaho admits that paragraph 21 of the Complaint correctly

quotes two passages in *United States v. Idaho*, 746 F. Supp. 3d 881 (D. Idaho 2024), which in turn quote part of clause 2 of Article VI of the United States Constitution and *Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), respectively. The State denies any other allegations in paragraph 21.

22. The State of Idaho admits that paragraph 22 of the Complaint correctly quotes passages in *Ting v. AT&T,* 319 F.3d 1126 (9th Cir. 2003). The State denies the remaining allegations in paragraph 22.

23. The State of Idaho admits the allegations in the first sentence of paragraph 23 of the Complaint. The second sentence's cited decision of *Block v. North Dakota*, 461 U.S. 273 (1983) lacks citations and speaks for itself as the best evidence of its content.

24. The State of Idaho admits that paragraph 24 of the Complaint correctly quotes part of clause 2 of section 3 of Article IV of the United States Constitution and that this clause is generally known as "the Property Clause." The State denies any other allegations in paragraph 24.

25. The State of Idaho admits that paragraph 25 of the Complaint correctly quotes passages in *State of Nev. v. Watkins,* 914 F.2d 1545 (9th Cir. 1990), which in turn quotes a passage in *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572 (1987). The State denies the remaining allegations in paragraph 25.

26. The State of Idaho admits the allegation in the first sentence of paragraph 26 that the "McCarran Amendment is a limited waiver of the United States' sovereign immunity." Answering further, the State admits the second

sentence in paragraph 26 of the Complaint correctly quotes parts of 43 U.S.C. § 666(a) (the "McCarran Amendment"), but denies that allegation that these are the "only" legally relevant or operative parts of the McCarran Amendment. Answering the first half of the third sentence, the State of Idaho admits it correctly quotes *United States v. Idaho*, 508 U.S. 1 (1993). Answering the last half of the third sentence of paragraph 26, the State denies that the cited decision of *Miller v. Jennings*, 243 F.2d 157 (5th Cir. 1957) has application or relevance to the administration of water right no. 34-10901, which was decreed in the SRBA – a comprehensive water rights adjudication that correctly named the United States as a party – and denies any remaining allegations in paragraph 26.

27. The State of Idaho admits that paragraph 27 of the Complaint correctly quotes parts of Idaho Code § 42-237a and its subsection (g). The State denies any remaining allegations in paragraph 27 because Idaho Code § 42-237a speaks for itself and is the best evidence of its content.

28. The State of Idaho admits that paragraph 27 of the Complaint correctly quotes part of Idaho Code § 42-602. The State denies any remaining allegations in paragraph 27 because Idaho Code § 42-602 speaks for itself and is the best evidence of its content.

**Responses to "Factual Background" Allegations**

29. The State of Idaho admits that in 1990 the State of Idaho and DOE entered into the *Water Rights Agreement Between The State of Idaho and The United States For The United States Department of Energy* ("1990 Agreement"). Answering

further, the State denies the allegation that the Agreement "recognized a water right for DOE in the amount of 35,000 acre-feet-annually… ." Answering further, the State admits the allegation that the Agreement stated "a priority date of April 7, 1950." The State admits the allegations in the last sentence of paragraph 29, and denies any remaining allegations in paragraph 29 because the Agreement speaks for itself and is the best evidence of its content.

30. The State of Idaho admits that paragraph 30 correctly quotes parts of the 1990 Agreement but denies the remaining allegations in paragraph 30 of the Complaint because the Agreement speaks for itself and is the best evidence of its content.

31. The State of Idaho admits that paragraph 31 correctly quotes part of the 1990 Agreement and that the need to litigate the issue of administration of water right no. 34-10901 has arisen. The State of Idaho denies every allegation that such issue can or should be litigated in this action or before this court.[1]

32. The State of Idaho admits the allegations in paragraph 32 of the Complaint.

33. The State of Idaho denies the allegation in the first sentence of paragraph 33 of the Complaint. Answering further, the second sentence of paragraph 33 correctly quotes part of the SRBA *Final Unified Decree*. The State denies any

[1] The State of Idaho reserves the right to litigate all issues raised in its *Motion for Declaratory Judgment re Administration of Water Right No. 34-10901* as pled in the State's Counterclaim, *infra*, should this Court deny the State's *Motion to Remand* in *Idaho v. United States* (case no. 1:26-cv-00546-DCN) and dismiss that case for lack of jurisdiction, as the United States has urged. *Infra* pp. 17-18.

remaining allegations in paragraph 33 because the *Final Unified Decree* speaks for itself and is the best evidence of its contents.

34. The State of Idaho admits that paragraph 33 of the Complaint correctly quotes part of the *Final Unified Decree*. Answering further, the State denies the allegation that the quoted part is the "only provision for administration in the Final Unified Decree … ." The State denies any remaining allegations in paragraph 34 because the *Final Unified Decree* speaks for itself and is the best evidence of its contents.

35. Answering paragraph 35 of the Complaint, the State of Idaho admits the allegations that on "July 25, 2025, the Director entered a Final Order Curtailing Ground Water Rights Junior to October 11, 1900" and that water right no. 34-10901 "is junior to October 11, 1900." The State denies the allegation that "IDWR properly excluded [water right no. 34-10901] from the list of water rights to be curtailed." The State denies any remaining allegations in paragraph 35 of the Complaint because that referenced order speaks for itself and is the best evidence of its content.

36. Answering paragraph 36 of the Complaint, the State of Idaho admits the allegations that "on May 14, 2026, the Director entered a Final Order Curtailing Ground Water Rights Junior to October 11, 1900" and that "the 2026 Order included [water right no. 34-10901] on the curtailment list." Answering further, the State denies the remaining allegations in paragraph 36 of the Complaint.

37. The State of Idaho admits the allegations in paragraph 37 of the Complaint to the extent the phrase "a curtailed water right" refers to one of the water

rights listed in Attachment A to the Order; otherwise the State denies the allegations in paragraph 37.

38. The State of Idaho denies the allegations in paragraph 38 of the Complaint.

39. The State of Idaho admits the allegations in the first sentence of paragraph 39 of the Complaint. The State admits that remaining sentences of paragraph 39 correctly quote parts of Idaho Code §§ 42-5259 and 42-5201(8). Answering paragraph 39 further, the State denies the allegations that the United States is prohibited from participating in a ground water district for purposes of mitigation, and denies any remaining allegations in paragraph 39 because the statutes speak for themselves and are the best evidence of their content, along with other applicable statutes in the Idaho Code that must be read together under cannons of statutory construction.

40. The State of Idaho denies the allegations in paragraph 40 of the Complaint.

41. Answering paragraph 41 of the Complaint, the State of Idaho admits that on "July 24, 2026, the Director entered an Order Rescinding 2026 Curtailment of DOE Water Right No. 34-10901; Order Denying Requests for Hearing" regarding water right no. 34-10901. Answering further, the State admits the allegation that "other federal water rights are included within the [2026] Order." The State denies the remaining allegations in paragraph 41.

**Responses to "Declaratory Relief Allegations"**

42. The State of Idaho admits the allegations in paragraph 42 of the Complaint but denies every allegation that such actual controversy can or should be litigated in this action or before this Court.

43. The first sentence in paragraph 43 of the Complaint is the United States' characterization of this action, not an allegation, and therefore does not require a response. To the extent a response is required, the State denies the allegations in the first sentence in paragraph 43. Answering further, the State of Idaho denies the allegations in the second sentence of paragraph 43.

44. The first sentence in paragraph 44 of the Complaint is the United States' characterization of this action, not an allegation to which a response is required. To the extent a response is required, the State denies the allegations in the first sentence in paragraph 44. Answering further, the State of Idaho denies the allegations in the second sentence of paragraph 44.

45. Paragraph 45 of the Complaint is the United States' characterization of this action, not an allegation to which a response is required. To the extent response is required to the United States' assertion, the State denies such allegations in paragraph 45. Answering further, the State of Idaho denies the allegation in paragraph 45 that "the Director lacks the authority to administer federal water rights through administrative proceedings."

46. Answering paragraph 46 of the Complaint, the State of Idaho admits the allegation that the State asserts the referenced 2026 Order is a valid exercise of the

authority granted under state and federal law. Answering further, the State denies the remaining allegations in paragraph 46.

47. Answering paragraph 47 of the Complaint, the State of Idaho admits that it asserts Idaho Code § 42-237a(g) lawfully grants the Director authority to administer the United States' decreed water rights but denies any allegation that the Order is based on Idaho Code § 42-237a(g).

48. Answering paragraph 48 of the Complaint, the State of Idaho admits that it asserts "the Director may administer the United States' water rights pursuant to the McCarran Amendment" and other federal and state law. Answering further, the State denies the remaining allegations in paragraph 48.

49. Answering paragraph 49 of the Complaint, the State of Idaho denies that "this Court has, and should exercise, the authority to declare the legal rights and obligations of the parties with respect to the Order and provisions of the Idaho Code and their application or enforcement." Answering paragraph 49 further, the State admits that parts of 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure are correctly quoted. The State denies any remaining allegations in paragraph 49.

**Responses to "First Claim For Relief"**

50. In response to paragraph 50 of the Complaint, the State incorporates by reference its answers and responses to the previous paragraphs of the Complaint as though fully set forth herein.

51. Answering the first sentence of paragraph 51, the State of Idaho admits

that, consistent with state and federal law, the Order attempts to prevent the United States from pumping ground water under water right no. 34-10901 when the right is "out of priority," unless Plaintiffs participate in an approved mitigation plan. The State denies any other allegations in the first sentence of paragraph 51. Answering further, the State admits the legal conclusion drawn from *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988), and avers that Congress has provided clear and unambiguous authorization for the State's regulation of water within its borders in the McCarren Amendment and other federal law. Answering further, the State admits that the third sentence of paragraph 51 correctly quotes a passage in *Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996), but denies the legal conclusion that the quote applies to this action. The State denies any remaining allegations in paragraph 51.

52. The State of Idaho denies the allegations in paragraph 52.

53. The State of Idaho denies the allegations in paragraph 53.

54. The State of Idaho denies the allegations in first and third sentences of paragraph 54. Answering further, the State admits that second sentence of paragraph 54 correctly quotes a passage in *United States v. Oregon*, 44 F.3d 758 (9th Cir. 1994), which speaks for itself and is the best evidence of its content. The State denies any remaining allegations stated in paragraph 54.

55. The State of Idaho denies the allegations in paragraph 55.

**Responses to "Second Claim For Relief"**

56. In response to paragraph 56 of the Complaint, the State incorporates by

reference its answers and responses to the previous paragraphs of the Complaint as though fully set forth herein.

57. The State of Idaho denies the allegations in paragraph 57 of the Complaint.

58. The State of Idaho admits that paragraph 58 of the Complaint correctly quotes a passage in *United States v. Idaho*, 746 F. Supp. 3d 881 (D. Idaho 2024), but denies any legal conclusion that the quote applies to this action. The State denies any remaining allegations in paragraph 58.

59. The State of Idaho admits that paragraph 59 of the Complaint correctly quotes part of Idaho Code § 42-5201(8), but denies all legal conclusions made in paragraph 59. The State denies the remaining allegations in paragraph 59 of the Complaint.

60. The State of Idaho denies the allegations in paragraph 60 of the Complaint.

61. The State of Idaho denies the allegations in paragraph 61.

**Responses to "Third Clam For Relief"**

62. The State admits the allegations in paragraph 62 of the Complaint.

63. Answering paragraph 63 of the Complaint, the State of Idaho lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 63 and therefore denies the same. Answering further, the State admits that the second sentence, generally, correctly quotes parts of Executive Order 12344, which are technical aspects of the Navy's nuclear

propulsion work as stated in Executive Order 12344, 10 U.S.C. § 6102, and 50 U.S.C. § 2406, which speak for themselves and are the best evidence of their content.

64. Answering paragraph 64 of the Complaint, the State of Idaho lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 64 and denies the same. Further, the State denies that the Order requires the United States to curtail water use at INL to zero and avers that the United States has access to alternative water supplies that can be used to support INL operations or provided to the holders of senior-priority water rights to mitigate for the United States' out-of-priority, uncompensated taking of the senior-priority water rights.

65. Answering the first sentence of paragraph 65 of the Complaint, the State of Idaho lacks knowledge or information sufficient to form a belief about the truth of the allegations and therefore denies the same. Answering the allegations in the second sentence of paragraph 65, the State of Idaho incorporates by reference its averments and answer to paragraph 64 as though fully set forth herein.

66. Answering paragraph 66, the State of Idaho lacks knowledge or information sufficient form a belief about the truth of the allegations in paragraph 66 of the Complaint and therefore denies the same. The State of Idaho also incorporates by reference its averments and answer to paragraph 64 as though fully set forth herein.

67. Answering paragraph 67, the State of Idaho lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first,

second, fourth and fifth sentences in paragraph 67 of the Complaint, and therefore denies the same. In response to the allegations in the third sentence of paragraph 67, the admit that curtailing water *usage* at NRF would delay construction, but deny that requiring curtailment of water right no. 34-10901 requires the United States to curtail water *usage* at NRF. The State of Idaho incorporates by reference its averments and answer to paragraph 64 as though fully set forth herein.

68. Answering paragraph 68 of the Complaint, the State of Idaho lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence and the allegation in the last sentence that INL has "1500 people on site," and therefore denies these allegations. In response to the remaining allegations in paragraph 68, the State admits that a disruption to the availability of potable water for domestic needs could delay work at INL, but denies any allegation that the 2026 Order would disrupt use of potable water at INL for domestic needs or uses.

69. The State of Idaho lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 69 of the Complaint and therefore denies these allegations, and denies that the Order requires curtailment of water use at INL.

70. Answering paragraph 70 of the Complaint, the State of Idaho admits that DOE and the Navy make the assertions stated in the first and second sentences. Answering further, the State of Idaho denies the allegations in the third and fourth sentences of paragraph 70.

71. The State of Idaho denies the allegations in the first and third sentences of paragraph 71 of the Complaint. Answering further, the State admits the allegations in the first half of second sentence of paragraph 71 and in the second half of that sentence to the extent the allegations are referring to curtailment of water right no. 34-10901 to prevent the United States from taking water out-of-priority and injuring senior water right holders.

**Responses to "Fourth Claim For Relief"**

72. In response to paragraph 72 of the Complaint, the State incorporates by reference its answers and responses to the previous paragraphs of the Complaint as though fully set forth herein.

73. The State of Idaho denies the allegations in the first sentence of paragraph 73 of the Complaint. Answering further, the State admits that paragraph 73 of the Complaint correctly quotes a passage in *Royal Indemnity Co. v. United States*, 313 U.S. 289 (1941), which speaks for itself and is the best evidence of its content. The State denies any remaining allegations in paragraph 73.

74. Answering paragraph 74 of the Complaint, the State of Idaho admits that the McCarran Amendment is, in part, an exercise of Congress's power under the Property Clause of the United States Constitution. Answering further, the State denies the remaining allegations in paragraph 74.

**RESPONSE TO "PRAYER FOR RELIEF"**

75. The State of Idaho denies that the United States of America, United States Department of Energy, or the United States Department of Defense are

entitled to judgment in their favor against the State of Idaho and further denies that any is entitled to an award of relief of any kind, including but not limited to the specific relief requested under paragraphs 75(a), 75(b), 75(c), 75(d), and 75(e). The State of Idaho further avers that the Complaint should be dismissed with prejudice with Plaintiffs taking nothing thereby.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense: Failure to State a Claim

The Complaint fails to state claims upon which relief may be granted, especially, but not exclusively, in seeking an injunction against "any … state-law statutory authority" based solely on allegations that Idaho Code § 42-237a(g) may not be applied to the United States.

### Second Affirmative Defense: Lack of Subject Matter Jurisdiction

This Court lacks subject matter jurisdiction over the United States' claims because they are within the Twin Falls District Court's prior exclusive jurisdiction to determine how water rights decreed in the SRBA are to be administered. *See, e.g.,* Dkt. 1-4 at 6 ("The SRBA is a general stream adjudication *inter se* of all water rights arising under state or federal law to the use of surface and ground waters from the Snake River Basin water system and for the administration of such rights.") (italics in origin; underlining added).

### Third Affirmative Defense: Waiver of Sovereign Immunity and Consent to State Regulation of Decreed Water Rights

The United States' waiver of sovereign immunity in the SRBA pursuant to the McCarran Amendment, 43 U.S.C. § 666, makes the United States fully subject to

Idaho water law, both substantive and procedural. *See, e.g., United States v. Idaho*, 508 U.S. 1, 8 (1993) ("the critical language of the second sentence of the McCarran Amendment submits the United States generally to state adjective law, as well as to state substantive law of water rights"); *Baker Ranches, Inc. v. Burgum*, ___ F.4th ___ (9th Cir. 2026), 2026 WL 2934856, at *8 ("forcing the United States to take the bitter with the sweet was one of the key purposes of the McCarran Amendment");*United States v. United States Bd. of Water Commissioners*, 893 F.3d 578, 595 (9th Cir. 2018) ("Fundamental principles of federalism vest control of water rights in the states.… Decreed rights are administered under applicable state law.").

**Fourth Affirmative Defense: Res Judicata**

The United States' claim that water right no. 34-10901 is not subject to administration by IDWR in accordance with its decreed priority date seeks to unlawfully enlarge the right, is contrary to the administrative provisions of the *Final Unified Decree*, and therefore is barred by the preclusive effect of the *Final Unified Decree* and other applicable law.

**Fifth Affirmative Defense: Unconstitutional Taking of Decreed Water Rights**

The United States' claim that water right no. 34-10901 is not subject to administration by IDWR in accordance with its decreed priority date seeks to unlawfully enlarge the right at the expense of decreed water rights held by both senior and junior appropriators, which are vested property rights and which the State is obligated to defend pursuant to Idaho Code § 42-101 and other Idaho law.

**Sixth Affirmative Defense: Waiver**

The United States has waived the claims it asserts in this action.

**Seventh Affirmative Defense: Laches**

The United States' claims and requests for relief are barred by the doctrine of laches.

*****

**COUNTERCLAIM**

Counterclaimant the State of Idaho ("State"), by and through its attorneys of record, and pursuant to Rules 12(a)(1)(B) and Rule 13(a) of the Federal Rules of Civil Procedure, hereby counterclaim against the Counterdefendant United States of America for and on behalf of the United States Department of Energy, as follows:

**Introduction**

1. This case is related to case no. 1:26-cv-546-DCN ("*Case No. 546*"), which is also pending before this Court. Dkt. 1-5 § VIII. Both cases arise from an order issued by the Director of the Idaho Department of Water Resources ("IDWR") in a "delivery call" proceeding for administration of decreed water rights according to their relative priority dates. Dkt. 1-2; *Case No. 546*, Dkt. 1-6.[2] Both cases present the question of whether decreed water right no. 34-10901 ("DOE Water Right") is subject to administration by IDWR in accordance with state and federal law. Both cases

[2] This Court may take judicial notice of its records in *Case No. 546* pursuant to F.R.E. 201, and the State requests that it do so. *See also Chavez v. Robinson*, 817 F.3d 1162, 1165 n.1 (9th Cir. 2016) ("[A] court may take judicial notice of its own records in other cases").

involve disputes over the language, purpose, and effect of the McCarran Amendment, 43 U.S.C. § 666(a), and the Snake River Basin Adjudication ("SRBA") *Final Unified Decree*.

2. *Case No. 546* consists of a motion for declaratory judgment the State filed in the Snake River Basin Adjudication regarding administration of the DOE Water Right ("*SRBA Motion*"). *Case No. 546*, Dkt. 1 at 1 – 2; Dkt. 1-1 at 7. The United States removed the *SRBA Motion* to this court, *Case No. 546*, Dkt. 1, and the State filed a motion to remand the *SRBA Motion* back to the Twin Falls District Court. *Case No. 546*, Dkt. 7. The remand motion has not yet been fully briefed.

3. The United States filed a response to the *SRBA Motion* that asks this Court to dismiss *Case No. 546* for lack of jurisdiction and then address the issues raised by the *SRBA Motion* in *this* action. *Case No. 546*, Dkt. 6 at 1, 10 – 14. The State filed a reply in support of the *SRBA Motion* without waiving its arguments that *Case No. 546* should be remanded to the Twin Falls District Court. *Case No. 546*, Dkt. 12.

4. This Counterclaim is alleged "in the alternative," should this Court deny the State's motion to remand in *Case No. 546* and grant the United States' request to dismiss that case for lack of jurisdiction. This Counterclaim does not waive the State's arguments that *Case No. 546* should be remanded back to the Twin Falls District Court for resolution in the SRBA and that the Twin Falls District Court has exclusive jurisdiction over the *SRBA Motion*, which the State expressly reserves.

## **Legal Background**

5. In the 1877 Desert Land Act, if not earlier, Congress "severed" all non-navigable waters from the lands within the public domain in the Western States and made these waters subject to the plenary control of the Western States. *California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 154-64 (1935).

6. Long before the McCarran Amendment was enacted in 1952, Congress had "repeatedly recognized" the "supremacy" of state law regarding the appropriation of water. *Id.* at 164 n.2; *see U.S. v. New Mexico*, 438 U.S. 696, 702 (1978). ("Where Congress has expressly addressed the question of whether federal entities must abide by state water law, it has almost invariably deferred to the state law."); *California v. U.S.*, 438 U.S. 645, 653 (1978) (referring to "the consistent thread of purposeful and continued deference to state water law by Congress"); *U.S. v. U.S. Bd. of Water Comm'rs*, 893 F.3d 578, 595 (9th Cir. 2018) ("Fundamental principles of federalism vest control of water rights in the states.").

7. Nonetheless, the United States consistently asserted sovereign immunity from Western States' systems for comprehensively adjudicating water rights within each state so the rights and the resource could be administered by state officials under state water law. *See United States v. State of Or.*, 44 F.3d 758, 765 (9th Cir. 1994) ("the system was impaired by the refusal of the federal government to participate"). The McCarran Amendment was intended "for the very purpose of correcting this situation and the evils growing out of such immunity." S.Rep.No. 755,

82d Cong., 1st Sess., 5 (1951) ("Senate Report")[3]; *see California v. U.S.*, 438 U.S. at 678 ("Perhaps the most eloquent expression of the need to observe state water law is found in the Senate Report on the McCarran Amendment").

8. Thus, in addition to waiving the United States' sovereign immunity in suits for the adjudication or administration of water rights, the McCarran Amendment also provides that "in any such suit" the United States shall "be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty," and shall "be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances." 43 U.S.C. § 666(a). These passages, the Supreme Court has held, "submit the United States generally to state adjective law, as well as to state substantive law of water rights." *U.S. v. Idaho*, 508 U.S. 1, 8 (1993); *see Baker Ranches, Inc. v. Burgum*, ___ F.4th ___ (9th Cir. 2026), 2026 WL 2934856, at *8 ("Congress sought to prevent [the United States] from receiving the protection of state water law on one hand while flouting it with impunity on the other"); *U.S. Bd. of Water Comm'rs*, 893 F.3d at 595 ("Decreed rights are administered under applicable state law.").

9. In Idaho, as in most Western States, water rights decreed in a general stream adjudication are not directly administered by the adjudication court, but rather by administrative or executive officers charged with distributing water

[3] A copy of the Senate Report is in Exhibit A, filed herewith.

according to the relative priorities of the decreed water rights and applicable state law. *See* Idaho Code § 42-1413(2) ("the director shall administer the water rights by distributing water in accordance with the final decree and with title 42, Idaho Code."); *State Eng'r of State of Nevada v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nevada*, 339 F.3d 804, 807 (9th Cir. 2003) ("Like many Western states, Nevada follows a two-step process in determining and enforcing rights to the use of water in its river systems. First is the adjudication phase .... Next comes the administration phase, where the state engineer and water commissioners give practical effect to the judicial decree and distribute water rights").

10. Under Idaho law, the Director of IDWR has a "clear legal duty" to administer water rights in accordance with their decreed elements and applicable Idaho water law. *City of Blackfoot v. Spackman*, 162 Idaho 302, 309, 396 P.3d 1184, 1191 (2017). Idaho law requires junior-priority water rights to be curtailed "during times of water scarcity, in order to supply the prior rights of others." Idaho Code § 42-607; *see also* Idaho Code § 42-106 ("As between appropriators, the first in time is first in right."); Idaho Const. art. XV § 3 ("Priority of appropriation shall give the better right as between those using the water").

11. The laws and principles stated in paragraphs 5 – 10 of this Counterclaim apply equally to federal reserved water rights and state law-based water rights held by a federal agency.

12. Because non-navigable waters were severed from the public domain and made subject to the plenary control of the Western States in 1877 if not earlier,

federal reserved water rights can only reserve water that has *not* been appropriated under existing water rights at the time federal lands are reserved for a federal purpose. *Cappaert v. U.S.*, 426 U.S. 128, 138 (1976).

13. The priority date of a federal reserved water right is the date the federal land is reserved for a federal purpose. The priority date defines the federal reserved water right's "place in line" when there is not enough water to satisfy all water rights. Thus, federal reserved water rights are superior to the rights of subsequent appropriators but inferior to the rights of prior appropriators.

14. Applying Idaho's prior appropriation doctrine is straightforward when all water rights divert surface water from the same stream or river.

15. Applying Idaho's prior appropriation doctrine is much more difficult when junior water rights divert (*i.e.* pump) ground water from an aquifer that is tributary to a stream or river from which a senior water right diverts surface water. This is known as "conjunctive administration" or "conjunctive management."

16. Conjunctive administration of interconnected ground water rights and surface water rights "requires knowledge by the IDWR of the relative priorities of the ground and surface water rights, how the various ground and surface water sources are interconnected, and how, when, where and to what extent the diversion and use of water from one source impacts the water flows in that source and other sources." *Am. Falls Reservoir Dist. No. 2 v. IDWR*, 143 Idaho 862, 877, 154 P.3d 433, 448 (2007). This is "precisely" the reason IDWR promulgated its "Rules for Conjunctive Management of Surface and Ground Water Resources," IDAPA 37.03.11.000—.050

("CM Rules"). *Am. Falls Reservoir Dist. No. 2*, 143 Idaho at 877, 154 P.3d at 448. Exhibit B at 4.

17. The CM Rules govern when a senior surface water right holder files a "delivery call" against junior ground water rights. *South Valley Ground Water Dist. v. IDWR*, 173 Idaho 762, 775, 548 P.3d 734, 747 (2024). Under the CM Rules, if the Director determines that junior ground water right holders are taking water that the senior surface water right holder needs and can use—that is, if the junior ground water right is "materially injuring" the senior surface water right by pumping "out of priority"—the Director *must* either (1) curtail the "out of priority" pumping, or (2) allow it continue pursuant to an approved mitigation plan. Exhibit B at 4; *Rangen, Inc. v. IDWR*, 160 Idaho 251, 256, 371 P.3d 305, 310 (2016), *abrogated in part on other grounds by 3G AG LLC v. IDWR*, 170 Idaho 251, 509 P.3d 1180 (2022).

**Factual Background**

18. The SRBA commenced in 1987 after the Idaho Supreme Court designated the Twin Falls District Court of Idaho's Fifth Judicial District as venue for the adjudication. *Walker v. Big Lost River Irr. Dist.*, 124 Idaho 78, 80, 856 P.2d 868, 870 (1993).

19. The SRBA is a general stream adjudication of *all rights* arising under state and *federal law* to use of the waters of the Snake River Basin in Idaho, "*and for the administration of such rights.*" Dkt. 1-4 at 6 (italics added).

20. "Conjunctive management of ground water and surface water rights is one of the main reasons for the commencement of the Snake River Basin

Adjudication." *A & B Irr. Dist. v. Idaho Conservation League*, 131 Idaho 411, 422, 958 P.2d 568, 579 (1997).

21. The United States is a party to the SRBA pursuant to the McCarran Amendment. Dkt. 1-4 at 7.

22. The SRBA *Final Unified Decree* was issued in 2014 and incorporates all "partial decrees" issued in the SRBA for individual water rights. *Id.* at 9 – 10. The Twin Falls District Court "retains jurisdiction" over the SRBA to "resolve any issues related" to the decreed water rights that are "not reviewable" under the Idaho Administrative Procedures Act ("IDAPA"). *Id.* at 13.

23. As an Idaho district court, the Twin Falls District Court is presumed "to be [a] court[] of general jurisdiction until proven otherwise," *Gila River Indian Cmty. v. Schoubroek*, 145 F.4th 1058, 1070 (9th Cir. 2025), and "competent to apply federal and state law." *McKesson v. Doe*, 592 U.S. 1, 5, (2020). The Twin Falls District Court presides over the SRBA and is sometimes informally known as "the SRBA District Court."

24. Further, as an Idaho district court, the Twin Falls District Court has "original jurisdiction" in "*all cases*." IDAHO CONST. art. V, § 20 (italics added); Idaho Code § 1-705; *Allen v. Campbell*, 169 Idaho 613, 618, 499 P.3d 1103, 1108 (2021). The Idaho Supreme Court has *specifically* held that this broad "original jurisdiction" exists in SRBA proceedings. *In re SRBA*, 128 Idaho 246, 258, 912 P.2d 614, 627 (1995). The Twin Falls District Court thus has full authority and jurisdiction to address and resolve any questions of state or federal constitutional law that arise in

SRBA proceedings, *including* the constitutionality of statutes enacted after the SRBA was commenced—which it has done on more than one occasion. *See id.* at 252, 912 P.2d at 620 ("In order to resolve the legal and constitutional questions presented by the application of this [new] legislation to the SRBA, the district court issued an order designating basin-wide issue."); *Case No. 546*, Dkt. 9-9 at 5 – 14 ("Constitutional Analysis of Idaho Code § 42-223(11)").

25. The Twin Falls District Court issued a *Partial Decree* for the DOE Water Right *nunc pro tunc* in 2003, pursuant to a 1990 "Water Rights Agreement" between the State and DOE. Dkt. 1-3.

26. The Agreement was lodged with the Twin Falls District Court "in lieu" of requiring DOE file a formal "notice of claim" for the DOE Water Right. Dkt. 1-4.[4]

27. While the *Partial Decree* "incorporates" the Agreement, Exhibit C, the Agreement does not define how the DOE Water Right is to be administered. It states, rather, that the parties were "unable to agree" upon whether "the issue of administration" of the DOE Water Right "is ripe or otherwise appropriate for decision in the SRBA," and "d[id] not address" this issue but rather reserved it for future litigation. Dkt. 1-1 at 10.

28. Under both the *Partial Decree* and the Agreement, the priority date of the DOE Water Right is April 7, 1950, and the quantity of the right is, at most, 35,000 acre-feet per year conditioned by a maximum rate of diversion not to exceed 80 cubic feet per second. These and other stated elements of the DOE Water Right are agreed-

[4] Such "in lieu" agreements were authorized by former Idaho Code § 42-1409(3).

to limitations of the DOE Water Right.

29. No element of the Agreement or the DOE Water Right authorizes ground water to be pumped "out of priority". The DOE Water Right does not authorize the United States to pump ground water that is needed to satisfy senior-priority surface water rights. The United States is not authorized to divert more than 35,000 acre-feet in any year.

30. In 2005, several irrigation entities and organizations holding senior rights to divert surface water from the Snake River known as the "Surface Water Coalition" ("Coalition" or "SWC") filed a delivery call under the CM Rules against junior ground water rights pumping from the Eastern Snake Plain Aquifer ("ESPA"). Exhibit B at 4 – 5.

31. Ground water pumping from the ESPA results in a loss of water from the river or a loss of gain to the river, which reduces the amount of water available for senior surface water rights. *Id.*; *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 794, 252 P.3d 71, 75 (2011).

32. The Coalition's delivery call alleged that junior ground water rights pumping from the ESPA were responsible for a long-term decline in ESPA levels and requested water rights administration "for 2005 and beyond." Exhibit B at 5. The Coalition's delivery call initiated an administrative proceeding before IDWR that has been ongoing since 2005 and remains active under IDWR Docket No. CM-DC-2010-001. Exhibit B at 5.

33. IDWR developed a multi-step process known as the "Methodology" to

implement the standards and requirements of the CM Rules in responding to the Coalition's delivery call. Exhibit B at 5 – 6. IDWR has revised the Methodology five times since it was first adopted in 2010; the current version was adopted in 2023. *Id.* The Idaho Supreme Court has affirmed IDWR's use of the Methodology in applying the CM Rules. *Id.*

34. Each year, the Director issues several administrative orders in the Coalition's delivery call proceeding. In some years those orders have required curtailment of hundreds of junior ground water rights irrigating tens of thousands of acres, unless the ground water rights are covered by approved mitigation plans. Exhibit B at 6 – 7. These orders have often resulted in considerable and highly visible public controversy. *Id.* at 6.

35. The Director's orders often have been judicially challenged, and several of these cases have reached the Idaho Supreme Court. Exhibit B at 6 – 7. Some of the Idaho Supreme Court's most consequential water law decisions over the past twenty years have been issued in these proceedings.

36. While the United States has participated in some of these proceedings, prior to this case it had not asserted that its decreed water rights were not subject to administration by IDWR. Exhibit B at 9 – 10.

37. In 2026, the Director issued several orders in the Coalition delivery call proceeding. Exhibit B at 8 –9. (WEAVER DEC). On May 14, 2026, the Director issued the "Final Order Curtailing Ground Water Rights Junior to October 11, 1900" ("Order") which included a list of the junior-priority water rights subject to

curtailment because they were not covered by an existing mitigation plan. Exhibit B at 8 – 9. ; Dkt. 1-2.

38. The list included the DOE Water Right, Dkt. 1-2 at 26, which has a priority date of April 7, 1950. Exhibit C.

39. The Order provided DOE, and the holders of other water rights that had not appeared on the curtailment list previously, a grace period of fifteen days to join an approved mitigation plan prior to curtailing their pumping. Dkt. 1-2 at 3-4; Exhibit B at 8 – 9.

40. The DOE Water Right should have been included in the curtailment order for the 2025 water year, which also applied to water rights junior to October 11, 1900, but it was not. Exhibit B at 9.

41. While the reason for this omission in the 2025 order is unknown, it was not due to an IDWR policy or practice of excluding the DOE Water Right from consideration in the Coalition delivery call proceeding. Exhibit B at 9. IDWR considers all decreed water rights, including those held by the United States, to be subject to priority administration in accordance with Idaho law. *Id.*

42. DOE responded to the Order on May 28, 2026, by filing a "Petition for Reconsideration and Request for Hearing" with IDWR, and filed an amended petition on June 3rd. *Case No. 546*, Dkt. 1-7. The DOE asserted it was making a "special appearance" in the Coalition delivery call proceeding "for the limited purpose of contesting IDWR's ability to exercise jurisdiction over DOE," but was also "seeking

reconsideration" of the Order pursuant to Idaho Code § 67-5264(4) and IDWR's Rules of Procedure. *Id.* at 1.

43. DOE conceded it had been properly joined to the SRBA under the McCarran Amendment, 43 U.S.C. § 666, and that the *Final Unified Decree* is valid. *Case No. 546*, Dkt. 1-7 at 7.

44. DOE nonetheless asserted IDWR has no authority to curtail the DOE Water Right because the Agreement "does not confer upon [IDWR] any right to curtail or otherwise administer DOE's adjudicated water rights." *Case No. 546*, Dkt. 1-7 at 2. The DOE further asserted that IDWR's administration of decreed water rights falls outside the McCarran Amendment's waiver of sovereign immunity, because it only applies to "suits," while "the delivery call process is purely administrative and not an integrated 'suit.'" *Id.* at 4 – 5.

45. The DOE asserted the United States' waiver of sovereign immunity in the SRBA under the McCarran Amendment does not include consent "to routine state curtailment or administration" of the United States' decreed water rights, *id.* at 5, and IDWR's administrative authority "yields in this instance to the United States' sovereign immunity[.]" *Case No. 546*, Dkt. 1-7 at 8.

46. DOE also asserted that curtailing the DOE Water Right would raise national security and public safety risks. *Case No. 546*, Dkt. 1-7 at 13 – 16. DOE reiterated these assertions in informal communications but also expressed willingness to consider joining a mitigation plan. The Director did not seek to enforce

the Order against DOE while the State and DOE attempted to resolve DOE's concerns. Exhibit B at 10.

47. On July 14, 2026, DOE informed IDWR that DOE had "voluntarily elected" to join the Big Lost River Ground Water District for purposes of mitigation "only for the 2026 water year." Exhibit D. The DOE "expressly preserve[d]" its legal positions and arguments "related to federal reserved water rights, sovereign immunity, federal preemption, and the limits of state administrative authority." The DOE also emphasized it "ha[d] not withdrawn its petition" and specifically retained its ability "to challenge IDWR curtailment authority in any forum." *Id.*

48. On July 24, the Director rescinded the Order to the extent it applied to the DOE's water right. Exhibit E at 3; *Case No. 546* , Dkt. 10 at 10. With respect to the DOE's arguments that the Director lacked authority to administer the DOE's water right, the Director concluded that the *Partial Decree* for the DOE Water Right had "reserved the issue of administration for future determination," and "the issues raised by the DOE are more appropriately raised before the SRBA District Court." Exhibit E at 2-3.

49. Therefore, on July 24, 2026, the State of Idaho filed a Motion for Declaratory Judgment in the subcase of the DOE Water Right retained by Twin Falls District Court, seeking a declaration that the DOE Water Right is subject to administration by IDWR in accordance with Idaho law ("*SRBA Motion*"). *Case No. 546*, Dkt. 1-1 at 7 – 37.

50. The United States removed the *SRBA Motion* to this court where it is

pending in *Case No. 546* and subject to the State's motion to remand to the Twin Falls District Court. *See supra* paragraphs 1-4.

**Declaratory Judgment Allegations**

51. The United States asserts the DOE Water Right *is not* subject to administration by IDWR in accordance with Idaho water law. Dkt. 1 at 10-12. The State of Idaho asserts the DOE Water Right *is* subject to administration by IDWR in accordance with Idaho water law, pursuant to the McCarran Amendment and the *Final Unified Decree*. Thus, there is an actual controversy between the State and the United States with respect to whether the DOE Water Right is subject to administration by IDWR in accordance with Idaho water law.

52. This disputed issue is ripe for resolution because resolution of the issue will affect the administration of every other decreed water right in the Coalition delivery call proceedings – both state law-based water rights and federal reserved water rights. The "interlocking" of every decreed water right involved in the Coalition delivery call proceedings means that "any order or action affecting one right affects all such rights." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 811 (1976).

53. The United States also asserts that IDWR lacks legal authority to administer any federal reserved water right anywhere within the state of Idaho. The State of Idaho asserts that any decreed water right held by the United State of America or any federal agency is subject to administration by IDWR in accordance with Idaho water law, pursuant to the McCarran Amendment. Thus, there is an

actual controversy between the State and the United States with respect to whether federally held water rights are subject to administration by IDWR in accordance with Idaho law.

54. Pursuant to 28 U.S.C. § 2201(a), this Court has, and should exercise, the authority to declare the legal rights and obligation of the parties with respect to the question of whether the DOE Water Right is subject to administration by IDWR in accordance with Idaho water law. *See* 28 U.S.C. § 2201(a) ("any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"). Federal Rule of Procedure 57 further states that a "court may order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. P. 57.

## CLAIM FOR RELIEF
## (McCarran Amendment & *Final Unified Decree*)

55. The State of Idaho incorporates by reference its previous allegations in this Counterclaim as though fully set forth herein.

56. The SRBA is a general stream adjudication *inter se* of all rights arising under state or federal law to the use of the waters of the Snake River Basin in Idaho, and for the administration of such rights.

57. The United States was joined to the SRBA pursuant to the McCarran Amendment, 43 U.S.C. § 666(a). The DOE Water Right (water right no. 34-10901) was decreed in the SRBA and incorporated into the SRBA *Final Unified Decree*.

58. When the United States is joined to a comprehensive suit for the adjudication or administration of water rights pursuant to the McCarran Amendment, the United States "shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty," and "(2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances." 43 U.S.C. 666(a). This language subjects the United States to both procedural and substantive state water law. *Idaho*, 508 U.S. at 8.

59. The United States is subject to the *Final Unified Decree*'s directive that "[t]he decreed water rights shall be administered in the Snake River Basin water system in accordance with this Final Unified Decree and applicable federal, state and tribal law[.]" Dkt. 1-4 at 13.

60. Applicable state law includes Idaho Code § 42-1413(2), which states that "[u]pon entry of a final decree, the director [of IDWR] shall administer the water rights by distributing water in accordance with the final decree and with title 42, Idaho Code." Dkt. 1-4 at 13.

61. Under Title 42 of the Idaho Code, IDWR rules implementing Title 42, and Idaho Supreme Court decisions applying Title 42 and IDWR's rules, the Director *must* distribute water among decreed water rights according to their priority dates.

62. Further, when responding to a delivery call under the CM Rules, the Director *must* order that junior-priority groundwater rights be curtailed when they

are diverting "out of priority" and taking water that senior priority surface water rights need and can use, unless the junior-priority groundwater rights are covered by an approved mitigation plan.

63. The United States' claim that the DOE Water Right is not subject to administration by IDWR in accordance with Idaho water law is contrary to the language and purpose of the McCarran Amendment, the *Final Unified Decree*, and Idaho water law. The United States' claim that the DOE Water Right is not subject to administration by IDWR in accordance with Idaho water law interferes with the Director's clear legal duty to distribute water in accordance with SRBA decrees and Idaho water law, threatens injury to other decreed water rights, and threatens to fundamentally undermine the State's sovereign authority to allocate and administer Idaho's waters according to Idaho water law.

64. The United States' claim that no water right decreed to the United States in the SRBA is subject to administration by IDWR in accordance with Idaho water law is contrary to the language and purpose of the McCarran Amendment and the *Final Unified Decree*. The United States' claim that no water right decreed to the United States in the SRBA is subject to administration by IDWR in accordance with Idaho water law interferes with the Director's clear legal duty to distribute water in accordance with SRBA decrees, partial decrees entered in other ongoing adjudications throughout the state, and Idaho water law, threatens injury to other decreed water rights, and threatens to fundamentally undermine the State's

sovereign authority to allocate and administer Idaho's waters according to Idaho water law.

**PRAYER FOR RELIEF**

65. Wherefore, the State of Idaho prays that the Court enter judgment in its favor and against the United States and award the following relief:

a. a declaration that the DOE Water Right (water right no. 34-10901) is subject to administration by the Director of the Idaho Department of Water Resources in accordance with Idaho law, including, but not limited to, an order from the Director requiring the United States Department of Energy to either curtail "out of priority" diversions under the DOE Water Right or provide mitigation as necessary to remedy material injury to decreed senior-priority water rights;

b. a declaration that to the extent the "Final Order Curtailing Ground Water Rights Junior to October 11, 1900" issued by the Director on May 14, 2026, applied to the United States, the Order was a valid and lawful exercise of the Director's authority;

c. a declaration that federally held water rights are subject to administration by the Director of the Idaho Department of Water Resources in accordance with Idaho law;

d. an award of the State of Idaho's costs; and

e. such other and further relief as the Court deems just and proper.

Respectfully submitted this 16th day of October, 2026.

/s/ Michael C. Orr

Joy M. Vega
Michael C. Orr
Deputy Attorneys General
Energy and Natural Resources Division
Office of the Attorney General
State of Idaho

*Attorneys for the State of Idaho*